IN THE UNITED STATES DISTRITC COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. :

**ROBERT BURDICK,**

      **Plaintiff,**

vs.

**BANK OF AMERICA, N.A.,**
**A Delaware Corporation,**
**GREENTREE SERVICING, LLC.**
**A Minnesota Limited Liability Company,**

      **Defendants,**
_____/

**COMPLAINT FOR DAMAGES**

Plaintiff Robert Burdick, by and through undersigned counsel, sues Bank of America and GreenTree Loan Servicing LLC an alleges:

**THE PARTIES, JURISIDICTION, AND VENUE**

1.  Plaintiff Robert Burdick is a natural person, over the age of 21, a citizen of the State of Florida and a resident of Broward County. Plaintiff will be referred to hereafter as "Borrower."

2.  Defendant Bank of America, N.A. is a Delaware Corporation with its principal place of business in the State of North Carolina. It engages in substantial business activities throughout the State of Florida, including the territorial jurisdiction of this Court and is therefore subject to its personal jurisdiction. This Defendant will be referred to hereafter as "Bank of America."

3.      Defendant GreenTree Servicing LLC. is a Minnesota limited liability company with it's principal place of business in the State of Minnesota.  GreenTree Loan Servicing has a number of members who are also limited liability companies and other corporate entities.  One of GreenTree's Loan Servicing's ultimate members is Walter Investment Management Corporation, whose principal business is located in the State of Florida.  Accordingly, this Defendant is a citizen of a number of different states, including Florida. This Defendant engaged in servicing federally related mortgage loans secured by real property throughout the United States and the State of Florida, including the territorial jurisdiction of this Court, and is therefore subject to its personal jurisdiction.  As a mortgage servicer, this Defendant is subject to specific federal laws and administrative regulations governing its mortgage serving activities. These laws and regulations include, but are not limited to, the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et. seq.*  This Defendant will be referred to hereafter as "GreenTree."

4.      Borrower brings tort claims arising under the common law of the State of Florida against both defendants seeking actual and punitive damages in excess of $75,000.  Because Defendant Bank of America is a citizen of the states of Delaware and North Carolina and Borrower is a citizen of Florida, there is complete diversity of citizenship between Borrower and Bank of America.  Because the amount in controversy exceeds $75,000, this Court has subject matter jurisdiction over Borrower's claims against Bank of America its diversity jurisdiction conferred by 28 USC § 1332.

5.      Borrower brings claim against GreenTree under the Real Estate Settlement Procedures Act and the Fair Debt Collection Practices Act, both are federal laws.  Thus, although both Borrower and GreenTree are citizens of the State of Florida, this Court nevertheless has subject matter jurisdiction because Borrower's claims against GreenTree involve a federal

question and this Court therefore has jurisdiction over those claims pursuant to 28 USC § 1331. In addition, Borrower also brings a claim for common law negligence against GreenTree under the common law of Florida. However, because this claim arises from the same transaction or occurrence as Borrower's federal claim, this Court also has supplemental subject matter jurisdiction over the negligence claim pursuant to 28 U.S.C § 1367.

## GENERAL ALLEGATIONS

6. Borrower owns a home located in Deerfield Beach, Florida. Since August 23rd, 1993, Borrower has owned and resided in this home. Borrower obtained a mortgage loan in order to finance the initial acquisition of that home. On March 30th, 2005 Borrower refinanced this mortgage loan by obtaining a new mortgage loan. The March 30th, 2005 mortgage loan was initially made by Countrywide Home Loans Inc. (hereinafter Countrywide), but was sold on the secondary market to a mortgage securitization trust known as " The Bank of New York Mellon, FKA The Bank of New York, as Trustee for the Certificate Holders of the CWABS Inc. , Asset Backed Certificates, Series 2005-4." This entity will be referred to hereafter as the mortgagee/investor.

7. As with the vast majority of all residential mortgage loans, Borrower's mortgage is evidenced by two documents - a promissory note and a mortgage. These documents will be referred to collectively as the "Loan Documents", and where necessary will also be referred to individually.

8. Although it sold its interest in Borrower's mortgage to the mortgagee/investor, Countrywide continued to service Borrower's mortgage loan. However, the sale of Borrower's mortgage terminated the contractual relationship between Borrower and Countrywide and established a new contractual relationship between Borrower and the mortgagee/investor.

9. Countrywide Home Loans Inc. was ultimately purchased by Bank of America. Bank of America continued to service Borrower's mortgage loan, first through a subsidiary known as BAC Home Loans Servicing LP, and then in its own name. Bank of America ultimately absorbed BAC Home Loans Servicing LP through a merger and assumed all of its assets and liabilities.

10. As a mortgage servicer, Bank of America is engaged in handling accounting, customer service, collection, and virtually all other services related to managing the residential mortgage loans in its portfolio. For all practical purposes, Bank of America and other mortgage servicers generally appear to the borrowers whose loan they service as the mortgagee or "lender." In fact, Bank of America frequently refers to itself as a "lender." However, Bank of America has never loaned Borrower any money in connection with the subject property, purchased Borrower's mortgage debt, nor engaged in any other activities that give rise to any relevant debtor/creditor relationship. The debtor/creditor relationship between Countrywide and Bank of America terminated before Bank of America's acquisition of Countrywide. Bank of America simply services Borrower's mortgage loan, and many other mortgage loans, as a contracted agent acting on behalf of the investors that actually own the debts. The vast majority of residential mortgage loans in the United States belongs to investors and are serviced by mortgage servicers such as Bank of America and approximately 30 other competitors. Most of these investors are mortgage securitization trusts, sometimes referred to as "Real Estate Mortgage Investment Conduits" (REMICs), Collateralized Debt Obligations (CDOs), Collateralized Mortgage Obligations (CMOs), or secondary market participates such as the Federal National Mortgage Association (also known as FNMA or FannieMae) and the Federal

Home Loan Mortgage Corporation (also known as FHMLC or FreddieMac). These entities will be referred to hereafter as FNMA and FHMLC.

11. The Loan Documents are written on standard forms published by the FNMA. This form provides that the "Lender" (here defined as Countrywide Home Loans, Inc.) "… may transfer this Note. The Lender or anyone who takes this note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."  Here, the mortgagee/investor became the "Note Holder" before the acts and omissions that give rise to this lawsuit occurred.

12. Because Bank of America does not own Borrower's mortgage loan, Bank of America is not a party to the various contracts that give rise to the debt or security interest at issue in this case. Accordingly, Bank of America is not legally entitled to enforce the contractual jury trial waiver provisions. Furthermore, Bank of America would not realize a financial loss if the subject mortgage loan were ultimately foreclosed and the collateral property sold for less than the balance of the loan. Instead, that loss would fall upon the mortgagee/investor.

13. On December 16th 2012, GreenTree became the servicer for Borrower's loan. As with Bank of America, there is neither a contract, nor a debtor/creditor relationship between Borrower and GreenTree . Therefore, GreenTree is not entitled to enforce the contractual jury trial waiver provisions found in the Loan Documents.

14. The subject mortgage between Borrower and the mortgagee/investor and originated by Countrywide was a fixed rate 30 year mortgage loan. As the Truth In Lending Act disclosure attached hereto as Exhibit "A" reflects, the agreement between the parties to the Loan Documents provided that Borrower would make 359 monthly payments in the amount of $860.24, and one final payment in the amount of $855.68.

15. On or about September 9th, 2011, Borrower received a letter from Bank of America asserting that his monthly payment had increased to $2113.45, nearly three times the agreed upon amount reflected in his Truth In Lending Disclosures attached hereto. A true and correct copy of the September 9th, 2011 letter is attached hereto as Exhibit "B."

16. Prior to September of 2011, Borrower made each of his scheduled monthly payments in the amount of $860.24 at, or near, the time they were due. On those occasions where his payments were late, Borrower paid the appropriate late fee and never missed any payments.

17. However, Bank of America returned Borrower's payment submitted for the month of December, 2011. Borrower continued to send several subsequent payments when they were due, but Bank of America rejected them insisting that the amount due for each monthly payment was $2113.45, and not $860.

18. The reason why Bank of America demanded the increased monthly payment is because it applied charges for insurance force-placed insurance that Bank of America also procured, added the associated premium to the amount of Borrower's mortgage loan, and increased the payment in order to recover the purported costs associated with force-placed insurance.

19. On August 24th, 2012, the mortgagee/investor filed a foreclosure lawsuit against Borrower in state court. The foreclosure complaint falsely alleges that Borrower had not paid his mortgage payments since June 1st, 2010. That foreclosure complaint is verified, under penalty of perjury, by Mondell Kelly, an assistant vice president of Bank of America. Even though Bank of America is not a party to the state court foreclosure litigation, its employee verified the foreclosure complaint on behalf of the mortgagee/investor.

20.     However, on October 1st, 2012, Bank of America filed a sworn affidavit in support of investor/mortgagee's motion for summary judgment in the state court foreclosure asserting that there were no advances for any insurance. That affidavit was also executed by a Bank of America "Assistant Vice President." The name of that individual is not clearly legible, but it appears to be different from Mondell Kelly. A true and correct copy of this affidavit is attached hereto as Exhibit "C."

21.     Borrower repeatedly disputed the charges for force-placed insurance.

22.     Similarly, on June 12th, 2014, GreenTree sent Borrower a letter incorrectly asserting that Borrower had not made any mortgage payments since June 1st, 2010, and that the total amount he owed as of the date of that letter was $42,938.72. While that letter is incorrect, that letter appears to assert that Borrower had missed 49 payments and the amount demanded is very close to the total of 49 monthly payments in the amount of $860.24. A true and correct copy of this letter is attached hereto as Exhibit "D."

23.     Because Bank of America swore, under penalty of perjury, in the state court foreclosure litigation that there were no force-placed insurance charges on Borrower's mortgage loan, and because GreenTree appears not to be attempting to collect any charges for force-placed insurance placed by Bank of America, it is reasonable to infer that at some point after the foreclosure was filed, Bank of America recognized that the force-placed insurance charges were inappropriate and not authorized by the Loan Documents, and accordingly rescinded those charges.

24.     However, neither Bank of America nor GreenTree have done anything to address the fact Borrower's mortgage was accelerated based on the incorrect position that his monthly payments had increased to $2113.45, that his timely and sufficient payments were wrongfully

rejected, and that the state court foreclosure seeks to recover those amounts. As of the date of this pleading, the state court foreclosure is still pending.

25. Although the mortgagee/investor is the actual plaintiff, the foreclosure litigation is now being managed and directed by GreenTree. In fact, on September 18th, 2013,Cristopher Ogden an employee of GreenTree, appeared for a corporate representative deposition and testified on behalf of GreenTree in the foreclosure litigation

26. During that deposition, Mr. Ogden acknowledged that the force-placed insurance charges appeared to have been removed and that those invalid charges were included in the amount claimed in the pending lawsuit. More than one year later however, GreenTree has done nothing to correct its admitted error.

## COUNT I – VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT (AGAINST GREENTREE)

27. This is an action for actual damages, statutory, damages, attorney's fees and litigation costs brought pursuant to the Fair Debt Collection Practices Act, 15 U.SC. § 1601 *et. seq*.

28. Borrower re-alleges and incorporates by reference the allegations in Paragraphs 6 through 26 above.

29. The Fair Debt Collection Practices Act prohibits a debt collector from making false or misleading statements concerning "…the character, amount, or legal status of any debt." 15. U.S.C. § 1692e(2)(a). Communications sent by a debtor collector that are covered by the Fair Debt Collection Practices Act are evaluated from the perspective of the least sophisticated consumer.

30. GreenTree's letter attached hereto as Exhibit "D" asserts that Borrower had not made any mortgage payments since June 1st, 2010, that as of the date of that letter he owed $42,398.72, and that GreenTree was the "creditor."  Each of these three statements are objectively false and violate 15. U.S.C. § 1692e(2)(a).

31. As a result of GreenTree's violation of 15. U.S.C. § 1692e(2)(a), Borrower is entitled to an award of actual damages, statutory damages for each violation in the total amount of $3000, attorneys' fees, and litigation costs.

WHEREFORE, Borrower demand trial by jury and the entry of judgment in their favor in the entire amount of their damages, together with an award of attorney's fees and costs.

## COUNT II -  VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT (AGAINST GREENTREE)

32. This is an action for actual damages, statutory, damages, attorney's fees and litigation costs brought pursuant to the Real Estate Settlement Procedures Act,  12 U.S.C. § 2601. § 1601 *et. seq*.

33. Borrower re-alleges and incorporate by reference the allegations in Paragraphs 6 through 26  above.

34. The Consumer Financial Protection Bureau promulgates Regulation X under statutory authority arising from amendments to RESPA enacted through the 2010 Dodd Frank Wall Street Reform and Consumer Protection Act.

35. On or about February 11th, 2014 Borrower, through counsel, sent a Qualified Written Request/Notice of Error to GreenTree at its designated address.  A true and correct copy of that letter is attached hereto as Exhibit "E."

36. Regulation X (12 C.F.R § 1024.35 (e)) requires that upon receipt of a Notice of Error, the servicer must respond to the notice by either:

>    (A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance;
>
>    or
>
>    (B) Conducting a *reasonable* investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the Borrowers right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

  (Emphasis added).

37. Rather than comply with its obligations under RESPA and Regulation X, GreenTree sent a letter dated March 25th, 2014 insisting that it had no obligation to investigate the potential error because the Borrower was involved in a Chapter 13 bankruptcy. However, GreenTree's position was unfounded and unreasonable because there's nothing in either RESPA or Regulation X providing any sort of an exception to the error resolution requirements when a loan is involved in bankruptcy. A true and correct copy of this letter is attached hereto as Exhibit "F."

38. Borrower sent a responsive letter to the individual who responded on GreenTree's behalf on April 2nd, 2014. Borrower's response points out that GreenTree's initial response was insufficient and did not comply with RESPA and Regulation X. Through that letter, Borrower requested that the matter be escalated to a supervisor, and also warned that the failure to properly address these errors would result in litigation. A true and correct copy of Borrower's responsive letter is attached hereto as Exhibit "G."

39. The same GreenTree employee who responded to Borrower's first correspondence also responded to the second. A true and correct copy of that response is attached hereto as Exhibit "H." In GreenTree's second response, it once again refused to make any corrections to the account, and insisted that it had no obligations to correct any error by the prior servicer. However, that position finds no support in RESPA or Regulation X and is fundamentally illogical because the identity of the servicer is irrelevant to the status of loan, and all servicers handle the loan on behalf of the mortgagee/investor.

40. Instead of complying with its unambiguous obligation under RESPA and investigating and correcting the errors on Borrower's account, GreenTree willfully refused to undertake any investigation or make any corrections, thereby violating its express obligations under 12 C.F.R § 1024.35 (e)), and the related provisions of the Real Estate Settlement Procedures Act.

41. As a result of GreenTree's violation of RESPA and 12 C.F.R § 1024.35 (e)), Borrower has been damaged. Those damages include attorney's fees related to legal services rendered in connection with the pending state court foreclosure and his efforts to invoke the RESPA error resolution procedures, the cost of preparing and sending the attached correspondence to GreenTree, emotional distress arising from the unjustified risk of losing his home, unwarranted fees and finance charges flowing from the failure to properly credit his payments, and damage to his credit rating.

42. Borrower is entitled to an award of actual damages, attorneys' fees, and litigation costs arising from GreenTree's violation of the RESPA/Regulation X error resolution procedures.

WHEREFORE,  Borrower demands trial by jury and the entry of judgment in hisfavor in the entire amount of their damages, together with an award of attorney's fees and costs.

## COUNT III – NEGLIGENCE (AGAINST GREENTREE)

43. This is an action for actual damages, including punitive damages, brought under the common law of the State of Florida.

44. Borrower re-alleges and incorporate by reference the allegations in Paragraphs 6 through 26  above.

45. As described in Paragraph 36 above, GreenTree has an express duty pursuant to a federal regulation duly enacted under the Consumer Financial Protection Bureau's lawfully delegated authority to investigate potential errors on the mortgage loans its services when the borrower brings those errors to GreenTree's attention.

46. In addition, GreenTree also has a common law duty to investigate potential errors on Borrower's account.  This duty arises under the circumstances of Borrower's relationship with GreenTree because the mortgagee/investor entrusts GreenTree with all customer service and accounting functions.  Borrower had no choice in the selection of GreenTree, and has no resource, other than a civil action, if he is dissatisfied with manner in which GreenTree discharges its obligations.  If an error is made on Borrower's mortgage loan account, Borrower is at risk of being charged additional fees and finance charges, sustaining damage to his credit rating, and even losing his home through a foreclosure.  Thus, GreenTree has a duty to make reasonable inquiry once it is alerted to a potential error affecting a loan that it services in order to protect Borrower from this foreseeable harm.

47. GreenTree not only failed, but willfully and repeatedly refused to investigate the errors that Borrower brought to its attention through the attached correspondence, despite having

an express duty to do so imposed by RESPA and Regulation X, as well as a related duty that arises from the relevant circumstances.

48.     GreenTree's failure to adequately investigate the issues raised in Borrower' attached Notice of Error, is not an isolated incident, but rather the consequence of systemic deficiencies within GreenTrees mortgage servicing operations, including a lack of reasonable policies, procedures, and appropriately trained and supervised employees.

49.     GreenTree knows or should know about its systemic failures to comply the RESPA/Regulation X error resolution procedures, but has willfully or recklessly failed to implement appropriate policies and procedures, or employ appropriately qualified personnel in order to rectify these deficiencies.  GreenTree has consciously failed to implement reasonable policies, procedures, and employ appropriately trained personnel because in order to avoid increasing its operating costs and thereby maintain an unreasonably high profit margin. GreenTree's omissions are done with the knowledge that its failures to properly response to notices of servicing errors present an unreasonable risk of injury to the borrowers whose loans it servicers.  Accordingly, an award of punitive damage is appropriate in order to deter GreenTree from continuing to engage in similar negligent acts and omissions in the future.

## **COUNT IV- NEGLIGENCE – (AGAINST BANK OF AMERICA)**

50.     This is an action for actual damages, including punitive damages, brought pursuant to the common law of the State of Florida.

51.      Borrower re-alleges and incorporate by reference the allegations in Paragraphs 6 through 26  above.

52.     Because it was entrusted with all of the customer service and management functions associated with Borrower's mortgage loan, including accounting for Borrower's

payments and imposing only fees and charges that were authorized by the Loan Documents, Bank of America who had a common law duty use ordinary skill and reasonable diligence in performing those functions.

53.     Similarly, because it established an escrow account for payment of the force-placed insurance, Bank of America had a duty to use reasonable skill and ordinary diligence in handling the escrow account.

54.     Bank of America breached its duties to Borrower by purchasing force-placed insurance under circumstances where it was not authorized by the Loan Documents to do so, increasing the monthly mortgage payment nearly three-fold to recover the cost of this inappropriate force-placement, and failing to correct account once it removed the force-placed insurance charges, while continuing to cause the mortgagee/investor to pursue collection of amounts that were not owed.

55.     Bank of America's repeated breaches of its duties to Borrower were willful, wanton and reckless, and the consequences of systemic deficiencies affecting its mortgage servicing business systems, including inadequate policies and procedures and a lack of appropriately trained and supervised personnel. Accordingly, an award of punitive damages is appropriate in order to deter it from engaging in tortious conduct in the future.

## DEMAND FOR TRIAL BY JURY

Borrower demands trial by jury on all claims so triable.

Respectfully Submitted,

THE LAW OFFICES OF JEFFREY N. GOLANT, P.A.

1000 W. McNAB RD. STE. 150
POMPANO BEACH, FL 33069
Phone:  (954) 942-5270
Fax:     (954) 942-5272
Email:   jgolant@jeffreygolantlaw.com
By: **/S/ JEFFREY N. GOLANT ESQ.**
Fla. Bar. No. 0707732
Counsel for Plaintiff Robert Burdick